**HAMILTON WATCH COMPANY, a body corporate**

v.

**The READ DRUG & CHEMICAL COMPANY OF BALTIMORE CITY, a body corporate.**

**Civ. A. No. 14586.**

United States District Court
D. Maryland.

April 14, 1964.

Roger A. Clapp, Hinkley & Singley, Baltimore, Md., of counsel; Robert E. LeBlanc and Henry Shur, LeBlanc & Shur, Washington, D. C., for plaintiff.

F. Fulton Bramble, Barton, Wilmer, Bramble & Penniman, and William B. Kempton, Baltimore, Md., for defendant.

Solomon Liss, Baltimore, Md., appearing specially to file amici curiae brief.

R. DORSEY WATKINS, District Judge.

The Read Drug and Chemical Company (Read's), sued by Hamilton Watch Company (Hamilton) for alleged infringement of Hamilton's patents by the sale of "Timex" electrically driven wrist watches, has moved for a stay of this action pending the trial of a declaratory judgment suit in the United States District Court for the District of Connecticut, C.A. No. 9794, entitled "United States Time Corporation v. The Hamilton Watch Company, Inc.", in which Hamilton is defendant and the plaintiff (U. S. Time) is the importer and distributor of Timex watches.

From the file the court finds the following facts:

Hamilton is the holder of three American patents, three Canadian patents, and several German patents on electric wrist watches. In January 1961 Hamilton notified U. S. Time that the manufacture, use or sale of watches imported by U. S. Time from West Germany was an infringement of two granted United States patents and of various pending applications. Negotiations for an adjustment of differences extended through 1961 and 1962, terminating unsuccessfully on October 16, 1962.

On April 17, 1963, Hamilton sued Read's in this District, in the captioned case. This is the only suit which has been filed by Hamilton in the United States.

On April 24, 1963, Hamilton sued U. S. Time and a wholly owned subsidiary of U. S. Time in West Germany on two German patents dealing with features allegedly found in Timex watches.

On April 26, 1963, Hamilton commenced an action against Timex of Canada, Ltd., a wholly owned subsidiary of U. S. Time, on three Canadian patents corresponding to Hamilton's three United States Patents.

On April 29, 1963 U. S. Time brought against Hamilton a declaratory judgment

action in the United States District Court for the District of Connecticut, C.A. No. 9794, seeking a declaration of invalidity and noninfringement of the three Hamilton United States Patents. In that action U. S. Time moved for a preliminary restraining order against the prosecution by Hamilton of its suit in this District against Read's, and the commencing of any like action against any other customer of U. S. Time. This motion was dismissed by Judge Timbers on July 16, 1963; a motion for rehearing was denied on September 4, 1963; and on October 3, 1963, notice of appeal to the United States Court of Appeals for the Second Circuit was entered. On January 31, 1964, the United States Court of Appeals for the Second Circuit affirmed the order of Judge Timbers from the bench, and later filed a per curiam opinion, 2 Cir. 1964, 327 F.2d 338, citing Joseph Bancroft & Sons Co. v. Spunize Co. of America, 2 Cir. 1959, 268 F.2d 522; Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 1952, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200; Sundstrand Corporation v. American Brake Shoe Company, 7 Cir. 1963, 315 F.2d 273.

It should also be noted that in the Connecticut action, Hamilton counterclaimed for declarations of validity and infringement.

On November 1, 1963 the pending motion for a stay was filed herein. It is clear that U. S. Time has advised Read's as to procedure in the case pending herein. Read's represents that U. S. Time has undertaken to reimburse it for its costs and expenses in defending this case, and to indemnify it with respect to any judgment that may be obtained against it. Counsel for Read's stated in open court his opinion that U. S. Time was legally obligated to defend Read's, but that U. S. Time had denied this obligation, and has not "taken over the defense of the action." It is not necessary at this time to determine whether or not the conduct of U. S. Time in connection with this suit would bind it as to any judgment rendered herein, even though it has not formally intervened.[1]

1. U. S. Time apparently been greatly perturbed by remarks of this court in the hearing on Read's motion to stay the action herein. The court adverted to Read's rather minor interest in the outcome of the litigation; the admitted assistance given by U. S. Time to Read's but the failure of U. S. Time to intervene; the existence of an alleged indemnity agreement, but the rather high improbability that Read's would be given uncontrolled discretion as to whether or not to defend, and if so, how; and be reimbursed for its unapproved expenditures.

U. S. Time asked for, and was granted, leave to file a brief "of Amici Curiae and to submit evidence in relation to defendant's motion to stay." U. S. Time then filed a voluminous binder in two parts; Part I being "Principal Correspondence on (1) U. S. Time Commitments; (2) Assistance Given," and Part II being "Miscellaneous Other Correspondence."

At the hearing on Read's motion to stay the action the court could not, and from the record did not attempt to, rule whether or not U. S. Time would be bound, by collateral estoppel or otherwise, if the case proceeded on the merits. It perhaps was therefore unnecessary for the court to examine the "evidence" offered on behalf of U. S. Time. It has, however, done so, and concludes that the relationship of U. S. Time to this litigation is greater and more direct than the pleadings, memoranda, and statements of Read's counsel had indicated. See, for example letter of April 26, 1963 advising that U. S. Time does not wish to subject itself to the jurisdiction of this court "[U]nless it becomes necessary"; agreeing to hold Read's harmless against any award of damages or costs; to reimburse Read's for all expenses "reasonably incurred" by it in defense of the action, "including assistance on any motion to stay the action pending judgment in the Connecticut action" [to be filed], provided Read's will not permit any consent or default judgment within six months, or thereafter without first giving U. S. Time opportunity to take over and control the defense; and proposing to forward affidavit, and a form of motion to stay; April 29, 1963 to Read's, submitting ideas for an answer to the complaint; May 14, 1963 from Read's to

It is of course conceded that Hamilton, assuming its patents to be valid, has the right to sue the vendor of a patented article (35 U.S.C. §§ 154, 271, 281); and that Read's is a vendor. Hamilton has sued no other vendor in the United States, and its suit against Read's antedates U. S. Time's declaratory judgment suit against Hamilton.

Read's has filed in the Connecticut suit an undertaking to accept and abide by any final judgment entered therein, but has declined to become a party to that litigation. U. S. Time has declined to intervene in and become a party to this suit in Maryland. See U. S. Time Corporation v. Hamilton Watch Company, 2 Cir. 1964, 327 F.2d 338, 339.

Read's relies principally upon the order of Judge Chesnut staying proceeding in Maryland said to involve "virtually the same factual situation" as this case, in the case of International Nickel Co. v. Martin J. Barry, Inc., pending the outcome in the Southern District of New York of a prior suit involving the same patents. On appeal, International Nickel Co. v. Martin J. Barry, Inc., 4 Cir. 1953, 204 F.2d 583, the court held that the order was neither a final order nor an order granting or denying an interlocutory injunction and so not appealable; but held that in any event there was no abuse of discretion.[2]

The facts in the International Nickel case and the instant case are quite dissimilar.

1. In International Nickel the patentee had sued Ford Motor Company, manufacturer, and also a Ford dealer in New York. International then·sued Barry, a Ford dealer, in Maryland.

In this case Hamilton, the patentee, sued Read's, a vendor, in Maryland. U. S. Time, an importer and distributor[3], later sued Hamilton in Connecticut.

2. (a) In the International Nickel case, Barry sought to intervene in the New York suit and enjoin prosecution of the Maryland suit, but was not permitted to do so. International Nickel Co. v. Ford Motor Co., S.D.N.Y.1952, 108 F. Supp. 833.[4]

U. S. Time, setting forth warranties of non-infringement, and an agreement to "defend, protect, indemnify and save harmless" the buyer on Read's order forms; September 24, 1963 to Read's, commenting on plaintiff's interrogatories; October 7, 1963 to Read's, offering "to devote whatever time is needed to assist" Read's in preparing motion papers, supporting briefs and affidavits, and in the preparation of answers and objections to interrogatories; and a willingness of U. S. Time's attorney to appear as Read's attorney for the limited purpose of arguing the motion to stay; October 23, 1963 to Read's, enclosing a draft of "Answers and Objections"; October 30, 1963 to Read's, enclosing a memorandum of "Law Points" with relation to the Motion to Stay; December 11, 1963 to Read's, enclosing a memorandum in reply to·Hamilton's memorandum in opposition to the motion to stay; and January 7, 1964 to Read's, embodying comments on Hamilton's reply memorandum, and stating that U. S. Time has "no plan to continue assistance if the action proceeds on the patent issues."

This "evidence" however, does not justify or require a decision at this time with respect to the status of U. S. Time in this litigation.

2. Chief Judge Parker stated in the opinion that if the court were of the opinion that an abuse of discretion had occurred, the attempted appeal would be treated as an application for mandamus; or that leave would be given to apply for a writ of mandamus.

3. "* * * Since 1961, U. S. Time has been importing and selling in the United States Timex electric watches made in the plant of its wholly owned German subsidiary." (Statement of Agreed Facts in the Connecticut suit).

Quaere—is U. S. Time a "manufacturer" within Kessler v. Eldred, 1907, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065?

4. Judge Kaufman held that the difference in parties in the two suits (despite an indemnity agreement by Ford with Barry) was sufficient to warrant denial of the injunction. On the claim of duplication he said (108 F.Supp., at page 837):

"* * * But courts cannot by judicial fiat supply legislation in their

(b) Read's has declined to (apply for leave to) intervene in the Connecticut suit.

(c) U. S. Time has declined formally to become a party to the Maryland suit..

3. In International Nickel, one of the defenses was prior public use, the witnesses to which were in New York, subject to the jurisdiction of the District Court for the Southern District, but not subject to the subpoena powers of the Maryland District Court.

In this case, the forum is the domicile of Read's and close to Hamilton's principal office in Pennsylvania. No showing of convenience has been made to U. S. Time. Presumably its principal witnesses would be from West Germany, equally convenient to Baltimore, Maryland, or New Haven, Connecticut.

Each of the parties relies [5] on Kerotest Mfg. Co. v. C-O-Two Fire Extinguisher Co., 1952, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200. In that case C-O-Two, a Delaware corporation, commenced in the United States District Court for the Northern District of Illinois an action against Acme Equipment Company for making and causing to be made and selling and using devices charged with infringing C-O-Two's patents. Later Kerotest, the manufacturer and supplier of Acme, began a suit against C-O-Two in the United States District Court for the District of Delaware for a declaration that the patents sued on in Illinois were invalid, and that the devices manufactured and supplied by Kerotest were not infringing. Kerotest, a Pennsylvania corporation, was subject to service of process in Illinois, and by amendment filed by C-O-Two in the Illinois suit Kerotest was sought to be joined as a defendant therein.

In Delaware, C-O-Two moved for a stay of the declaratory judgment action; and in the same action Kerotest sought to enjoin C-O-Two from prosecuting the Illinois suit, either against Kerotest alone, or generally, as the Delaware District Court might deem just and proper. The Delaware District Court stayed the Delaware action and refused to enjoin the Illinois proceeding, subject to reexamination after ninety days. On appeal, the Third Circuit affirmed, holding that the stay to obtain more information was not an abuse of discretion. 182 F.2d 773, 775.

During the ninety-day period the Illinois District Court allowed the joinder of Kerotest as a defendant; denied a motion by Acme to stay the Illinois proceedings pending disposition of the Delaware suit; and Kerotest made a general appearance. After ninety days both parties renewed their motions in Delaware, Kerotest asking that C-O-Two be enjoined from prosecuting the Illinois suit only as to Kerotest. The Delaware District Court enjoined C-O-Two from proceeding in the Illinois suit against Kerotest, and denied the stay of the Delaware action, largely on the ground that this was not an exceptional case, and that since the Delaware action between C-O-Two and Kerotest was commenced before Kerotest was made a defendant in the Illinois suit, the Delaware suit should be allowed to proceed. 92 F.Supp. 943. The Court of Appeals for the Third Circuit, en banc, two judges dissenting, reversed, on the ground that finality could be obtained in Illinois, but probably not in Delaware. 189 F.2d 31.

anxiety to reform the present system of patent litigation. Those who find that the maintenance of separate suits against customers as well as against manufacturers is wasteful must resort to the legislature. * * * "

A fortiori would this apply where the suits are patentee versus vendor, and importer-distributor versus patentee.

5. The court cannot be critical of the reliance by each upon this opinion. Until the last paragraph, Read's can draw substantial comfort; but the last paragraph is conclusive against it.

The Supreme Court affirmed, refusing to upset a conclusion derived "from an extended and careful study of the circumstances of this litigation" which had "led the Court of Appeals twice to conclude that all interests will be best served by prosecution of the single suit in Illinois. Even if we had more doubts than we do about the analysis made by the Court of Appeals, we would not feel justified in displacing its judgment with ours.[3]" 342 U.S. 180, 184, 72 S.Ct. 219, 221, 96 L.Ed. 200.[6]

Whatever comfort Read's might seek to derive from the refusal by the Supreme Court to interfere with the Third Circuit's "exercise of discretion" in the Kerotest case, cannot survive the last paragraph of the opinion therein, which, with the interpolation of the pertinent parties herein, reads as follows (342 U.S. 180, 185–186, 72 S.Ct. 219, 222, 96 L. Ed. 200):

"The manufacturer [7] [U. S. Time] who is charged with infringing a patent cannot stretch the Federal Declaratory Judgments Act to give him a paramount right to choose the forum for trying out questions of infringement and [in]validity. He [U. S. Time] is given an equal start in the race to the courthouse, not a headstart. If he is forehanded, subsequent suits against him by the patentee [Hamilton] can within the trial court's discretion be enjoined pending determination of the declaratory judgment suit,[4] and a judgment in his favor bars suits against his customers.[5] [Read's]. If he is anticipated [Hamilton v. Read's], the court's discretion is broad enough to protect him [U. S. Time] from harassment of his customers [Read's]. If the patentee's [Hamilton's] suit against a customer [Read's] is brought in a district where the manufacturer [U. S. Time] cannot be joined as a defendant, the manufacturer [U. S. Time] may be permitted simultaneously to prosecute a declaratory action against the patentee [Hamilton] elsewhere [in Connecticut].[8] And if the manufacturer [U. S. Time] is joined as an unwilling defendant in a *forum non conveniens*, he has available upon an appropriate showing the relief provided by § 1404(a) of the Judicial Code. 62 Stat. 869, 937, 28 U.S.C. § 1404(a) [6]."

Under the above-quoted language, and the provisions of the Patent Laws, Hamilton had the undoubted right to sue Read's in this forum. To agree with Read's that Hamilton has the right to sue, but not to prosecute, would be to frustrate this right. Read's "voice of Jacob"[9] protest that double litigation will result is untenable. Read's is involved in, and has to defend, only one suit. Such double litigation as there may be is the product of the conduct of U. S. Time. It could have brought its declaratory judgment suit against Hamilton before Hamilton sued Read's. It

6. Footnote 3 to the opinion of the Supreme Court reviews a number of decisions by the Courts of Appeals with respect to concurrent controversies, and concludes (342 U.S., at page 185, 72 S. Ct., at page 222, 96 L.Ed. 200):

"* * * By endorsing what was in effect an exercise of discretion by the Court of Appeals below upon consideration of the specific circumstances here, we neither approve nor throw doubt upon decisions by it or other Courts of Appeals."

7. See footnote 3, above. U. S. Time is not literally the "manufacturer", but is the importer and distributor of Timex watches made in the plant of its wholly owned German subsidiary.

If U. S. Time were to be treated only as a vendor, not a manufacturer, then the suit in the District of Connecticut would have no greater finality than the suit against Read's.

8. Or the manufacturer (U. S. Time) may intervene in, or take over the defense of, the suit against the customer (Read's).

9. Genesis 27:22.

may intervene in the instant suit, either directly, or by taking over the control of the suit against Read's. Neither law nor equity justifies the relief sought. Joseph Bancroft & Sons Co. v. Spunize Co. of America, 2 Cir. 1959, 268 F.2d 522, 524; See also, United States Pipe and Foundry Co. v. Woodward Iron Co., 4 Cir. 1964, 327 F.2d 242, 244.

The motion for a stay is denied.

