Marshall RATTNER, Marshall Rattner, Inc., and National Limousine Service, Inc., Plaintiffs,

v.

BOARD OF TRUSTEES OF the VILLAGE OF PLEASANTVILLE, Richard Kersten, Paul Lohner, Syd Huckvale, and M. Gail Grimaldi, individually and as Trustees of the Village of Pleasantville, the Planning Commission of the Village of Pleasantville, Toba Weiss, Chairwoman, Richard W. Murphy, Edward H. Principe, Charles W. Cook, Stan S. Mroczkowski, John Brentano, Peter R. Beaven, individually and as members of the Planning Commission of the Village of Pleasantville, Roy McCutcheon, individually and as Building Inspector of the Village of Pleasantville, John St. Leger, individually and as Village Administrator and Zoning Enforcement Officer of the Village of Pleasantville, Calvin Manning, individually and as Chief of Police of the Village of Pleasantville, Patrick Costello, individually and as a Police Officer of the Village of Pleasantville, John B. Farrington, individually and as Mayor of the Village of Pleasantville, John A. Horn, individually and as former Mayor of the Village of Pleasantville and the Incorporated Village of Pleasantville, Defendants.

No. 84 Civ. 8137 (RWS).

United States District Court, S.D. New York.

June 12, 1985.

Cadwalader, Wickersham & Taft, P.C., New York City, for plaintiffs; John J. Walsh, David R. Kittay, Kevin W. Goering, New York City, of counsel.

Golenbock and Barell, New York City, for defendants; Arthur M. Handler, Robert S. Goodman, Michael M. Meadvin, David J. Abeshouse, New York City, of counsel.

## OPINION

SWEET, District Judge.

Marshall Rattner, Marshall Rattner, Inc., and National Limousine Service, Inc. ("Rattner") have brought this action against the Board of Trustees of the Vil-

lage of Pleasantville, the Planning Commission of the Village of Pleasantville, and various persons, in their individual and official capacities, (collectively "Pleasantville") alleging the intentional denial of Rattner's constitutionally protected civil rights. Pleasantville has moved to dismiss or stay this action. The motion to stay is granted.

**Facts**

The facts as alleged by Rattner will be accepted for the purposes of this motion. In this action, based on 42 U.S.C. § 1983, Rattner seeks $2.5 million in compensatory damages, $3 million in punitive damages, and attorneys' fees, for violation of his Fourteenth Amendment rights to due process of law and equal protection of the laws; his Fifth and Fourteenth Amendment right to just compensation for property taken by government, and for violation of various provisions of the New York Constitution. Rattner alleges that beginning in the fall of 1982 and continuing to the present, Pleasantville, using the authority of elective and appointive office, has engaged in conspiracies to deny Rattner his civil rights. Rattner alleges that Pleasantville:

(a) in 1983 and 1984, singled out Rattner's employees for selective enforcement of Pleasantville's parking ordinance after using unusual, improper and surreptitious methods to ascertain which cars belonged to Rattner's employees;

(b) singled out Rattner for selective enforcement of the Pleasantville zoning law and State Building Code by issuing groundless violations against Rattner;

(c) singled out Rattner for selective enforcement of the Pleasantville tax law by virtually doubling Rattner's property tax assessment in January of 1983;

(d) singled out Rattner for selective application of the Pleasantville police powers by failing to investigate meaningfully shootings at Rattner's offices and vehicles and attempting to cover up information relevant to the firebombing of Rattner's home on April 25, 1984;

(e) under false pretenses and without legal authority, harassed Rattner employees and threatened to jail an independent contractor hired by Rattner;

(f) commenced, in bad faith, frivolous administrative and court proceedings against Rattner, solely to harass and intimidate Rattner;

(g) pandered to improper political influence in completely ignoring proper planning procedures in arbitrarily obstructing Rattner's legitimate attempts to conduct their limousine business; and

(h) singled out Rattner for harassment under Pleasantville's vague zoning ordinance, which Pleasantville knew did not prohibit Rattner's activities.

Rattner alleges that on January 5, 1982 he purchased the premises at 409 Manville Road, Pleasantville, New York, in order to house the offices of his business ventures. Thereafter, Rattner started to operate a limousine service. 409 Manville Road and the neighboring property, 423 Manville Road, are located in an "RO-2" medium density "office district" as defined in Article III of the Zoning Law of The Village of Pleasantville.

By April 20, 1982, National Limousine Service, Inc. was operating four limousines out of its office at 409 Manville Road. On April 20, 1982, the then building inspector of Pleasantville, Frank C. Hope, issued a Certificate of Occupancy for the premises at 409 Manville Road which certified that the then existing uses of 409 Manville Road conformed with all applicable state and local building codes.

On September 1, 1982, Rattner contracted to purchase the adjoining 423 Manville Road property. A plan was presented to the Pleasantville Planning Commission showing a single common parking facility servicing the adjacent properties at 409 and 423 Manville Road, and on September 20, 1982, a revised plan was forwarded to the Building Inspector for consideration by the Planning Commission. On or about October 4, 1982, Rattner's counsel took part in a conference telephone call during which

both Building Inspector Hope and Village Attorney Martineau allegedly agreed that the site plan application for a parking facility was valid and legal under the Pleasantville zoning law. Despite the certification of the Building Inspector, on December 1, 1982 the Planning Commission adopted a resolution denying Rattner's site plan application for reasons, according to Rattner, that were based on politics, not the merits of the application.

On December 4, 1982, Rattner removed certain trees from 423 Manville Road, an action Building Inspector Hope allegedly stated was legal. Although Rattner had obtained the Building Inspector's approval before cutting down the trees, a police officer of the Village of Pleasantville was sent to investigate. On December 5, 1982, unknown persons fired shots through a building window and door at 409 Manville Road and through the windows of an automobile parked there. Foreign substances were placed in the gas tanks of Rattner's vehicles, causing significant damage. Rattner immediately complained to the Pleasantville Police Department, but the Pleasantville police failed to undertake a meaningful investigation of these incidents. Rattner claims that the failure to investigate these shootings was purposeful and part of the Pleasantville officials overall effort to curry favor with certain residents and intimidate Rattner in the exercise of his civil rights.

On December 14, 1982, Rattner commenced an Article 78 proceeding (the "First Article 78 Proceeding") in New York state Supreme Court against the Planning Commission.

On or after December 16, 1982, Rattner was informed that the Assessor had increased the assessment of 409 Manville Road from $297,150 to $567,000. On March 18 and May 20, 1983 Pleasantville issued five notices of violations to Rattner regarding alleged parking and building code violations and improper tree removal at 409 and 423 Manville Road. All five of these notices were allegedly issued to harass Rattner and constituted selective enforcement against Rattner.

On April 25, 1983 New York Supreme Court Justice Anthony J. Cerrato granted Rattner's petition in the First Article 78 Proceeding and annulled the Planning Commission's refusal to determine the proposed site plan, remanding the matter to the Planning Commission to determine the site plan application. The First Article 78 proceeding is no longer pending.

On June 1, 1983 the Planning Commission resolved to appeal to Pleasantville's Zoning Board of Appeals for a review of the Building Inspector's determination, made the year before, that Rattner's proposed use of 423 Manville Road was conforming. Both of Pleasantville's contemplated appeals to the Zoning Board of Appeals were allegedly without legal foundation, as was known to Pleasantville at all relevant times.

On June 30, 1983, Rattner instituted an Article 78 Proceeding (the "Second Article 78 Proceeding") against the Planning Commission for the purpose of compelling the Planning Commission to pass upon the site plan. Shortly after the filing of the second Article 78 Proceeding, Pleasantville commenced discussions with Rattner regarding outstanding issues between them. Rattner and defendant St. Leger, the Village Administrator and Zoning Enforcement Officer, agreed to propose to the Board of Trustees, and a plurality of the Planning Commission recommended passage of, a zoning amendment that would have specifically permitted Rattner's use. The Board of Trustees, however, rejected the proposed amendment. Rattner alleges that the Board of Trustees' manipulation of the amendment process was another incidence of bad faith and abuse of Pleasantville's powers for improper purposes.

On October 22, 1983 Rattner hired a contractor to commence paving of the rear area of 423 Manville Road. Town Officials instructed St. Leger to stop the paving. St. Leger immediately ordered Police Officer Costello to accompany him in a police car to 423 Manville Road, and, after iden-

tifying himself as the "Inspector" of Pleasantville, demanded that paving cease because no building permit had been obtained. Although the Pleasantville zoning law did not require a building permit for the paving work Rattner was trying to do, St. Leger threatened one of Rattner's employees and the contractor with arrest and imprisonment if paving were continued.

Shortly thereafter, the Board of Trustees commenced a declaratory judgment action (the "Declaratory Judgment action") against Rattner and applied for a preliminary injunction to prevent Rattner from parking and maintaining limousines at 409 Manville Road, and to prevent the Planning Commission from approving Rattner's previously submitted site plan for 423 Manville Road.

In an amended answer in the Declaratory Judgment Action, Rattner alleged as a Tenth Affirmative Defense the selective enforcement of the law, denial of equal protection of the laws, and denial of due process rights. The text of the affirmative defense states:

The within action is no more than a culmination by the plaintiffs herein of a course of conduct by the plaintiffs and defendant Planning Commission of the Village of Pleasantville to selectively enforce the zoning laws to the detriment of the defendants, Marshall Rattner, Marshall Rattner, Inc., and National Limousine Service, Inc. and by virtue of same, the plaintiffs and defendant Planning Commission have acted and are acting in concert to deny the Rattner defendants the equal protection of the law and their due process rights. By virtue of the conduct of the plaintiffs and defendant Planning Commission and all the proceedings had heretofore, the within action should be dismissed by this Court.

The amended answer was served as a result of a motion by Rattner specifically to amend the original answer in order to add the Tenth affirmative Defense. The alleged deprivations perpetrated by Pleasantville, upon which the Tenth Affirmative Defense is based, according to Rattner's answers to interrogatories, include:

Authorizing the defense of the First Article 78 Proceeding against the Planning Commission with full knowledge of the impropriety of the Planning Commission's action.

Threatening the defendants with code violations for failure to compromise defendants' legal rights as against the Village.

Causing the filing of a total of six notices of violation against the defendants' businesses and premises, with full knowledge of the impropriety of same.

Authorizing sham appeals to the Zoning Board of Appeals with full knowledge of the untimeliness of such appeals.

Engaging in bad faith in settlement discussions and thereafter reneging on such settlements, based solely upon political and/or personal reasons.

Threatening to arrest persons hired by the defendants to pave a portion of defendants' property at 423 Manville Road and thereby causing a cessation of work and a loss of valuable materials.

The refusal by the Planning Commission members to accept the certification by the Building Inspector as to the legality of the uses of the Rattner defendants during site plan application proceedings.

A refusal by the Planning Commission members to accept the confirmation of the Building Inspector's opinion by the Village Attorney via a written opinion.

A usurpation by the Planning Commission of the powers of the Building Inspector and Zoning Board of Appeals by denying defendants' site plan application strictly on the basis of the Planning Commission's interpretation of the Zoning Law.

A refusal by the Planning Commission members to adhere to the requirements of the decision of the Hon. Anthony J. Cerrato by refusing to consider properly defendants' site plan application.

The authorizing by the Planning Commission of a sham appeal to the Zoning Board of Appeals by resolution dated

June 1, 1983 with full knowledge that said appeal was untimely.

The Declaratory Judgment action is still pending.

At or about the time of the paving incident, a defendant town official allegedly surreptitiously entered on Rattner's property and made lists of license plate numbers of cars parked on Rattner's property and then supplied the Pleasantville police department with the lists of license plate numbers and directed Police Chief Manning to obtain the names of the owners of the photographed and listed vehicles. Thereafter, police department employees selectively ticketed Rattner's employees cars, when parked on the street, for "violations" that were not issued to other cars similarly parked.

On April 11, 1984, Justice Stolarik of the Supreme Court of the State of New York issued a decision and order denying Pleasantville's motion for a preliminary injunction in the Declaratory Judgment Action. Following Justice Stolarik's decision, unknown persons allegedly firebombed Rattner's home in Chappaqua on April 25, 1984. On the day following the alleged arson, Rattner informed defendant officials that he had reason to believe that certain neighborhood residents had knowledge of the arson. Rattner alleges that defendants have knowledge regarding the arson that they are refusing to disclose to Rattner or the New Castle Police Department. This cover-up is alleged to be part of Pleasantville's efforts to intimidate Rattner.

On June 22, 1984 Rattner commenced an Article 78 proceeding challenging the Town's appeal to the Zoning Board of Appeals (the "Third Article 78 Proceeding"). On January 11, 1985, Justice Angelo J. Ingrassia of the Supreme Court of the State of New York denied the respondent Village's motion to dismiss the Third Article 78 Proceeding. This action is still pending.

On or about December 2, 1984 Mr. Vinberg, the tenant-resident of 423 Manville Road, died. Pursuant to the agreement between the Vinbergs and Rattner, the tenancy automatically terminated on or about February 7, 1985, ending the residential use of the property. On March 1, 1985, Rattner applied for a demolition permit in order to take down the existing structure at 423 Manville Road. On March 6, 1985 defendant Martineau wrote to Rattner informing him of Pleasantville's requirements for demolition and stated Pleasantville's position that Rattner would be required to submit a new site plan respecting any proposed use of the premises after demolition.

On March 8, 1985 the amended complaint was filed in this action.

The relationship among the claims asserted in the various pending cases—this federal case, the second and third Article 78 cases, and the declaratory judgment case—are set out below:

| Allegations | Amended Federal Complaint | New York State Court Pleadings |
|---|---|---|
| 1. Rattner's purchase of 409 Manville Road; issuance of certificate of occupancy; commencement of limousine business and purchase of 423 Manville Road. | ¶ 13–15 | ¶ Second, Fourth of 2nd Article 78 Petition. ¶ Seventh-Tenth of 3rd Article 78 Petition. |
| 2. Rattner's submission of site plan to Planning Commission on September 8, 1982 and subsequent proceedings leading to denial of site plan approval on 12/1/82; allegations that such denial was improper. | ¶ 15–17 | ¶ Fifth-Fourteenth of 2nd Article 78 Petition. ¶¶ Eleventh-Twenty-first of 3rd Article 78 Petition. Tenth Affirmative Defense in declaratory judgment action as supplemented by answer to interrogatory 24. |

| Allegations | Amended Federal Complaint | New York State Court Pleadings |
|---|---|---|
| 3. Police investigation of tree cutting at 423 Manville Road and failure to investigate alleged shooting. | ¶ 18 | Tenth affirmative Defense as supplemented by answer to interrogatory 7. |
| 4. Commencement of first Article 78 Proceeding alleging Planning Commission had usurped authority of Zoning Board of Appeals. | ¶ 19 | ¶ Fourteenth of 2nd Article 78 Petition. Twenty-first of 3rd Article 78 Petition. |
| 5. Alleged threats by defendants to harass plaintiffs with building code violations, increasing assessment, and ticketing. | ¶ 20–21, 25, 31 | ¶ Tenth Affirmative Defense as supplemented by answer to interrogatory 7. |
| 6. Issuance of violations to Rattner concerning 408 and 423 Manville Road. | ¶ 23 | Tenth Affirmative Defense as supplemented by answer to interrogatory 7. |
| 7. Proceedings before Planning Commission on remand and resolutions of Planning Commission and Board of Trustees to place matter before the Zoning Board of Appeals; allegations of impropriety thereof. | ¶ 26 | ¶ Sixteenth-Thirty-fourth of 2nd Article 78 Petition. ¶ Twenty-third-Twenty-fifth of 3rd Article 78 Petition. Tenth Affirmative Defense supplemented by answer to interrogatory 24. |
| 8. Alleged threats of arrest of persons hired by defendants to pave property at 423 Manville Road. | ¶ 29 | Tenth Affirmative Defense as supplemented by answer to interrogatory 7. |
| 9. Board of Trustees' failure to approve results of certain settlement discussions. | ¶ 28 | Tenth Affirmative Defense as supplemented by answer to interrogatory 7. |
| 10. Commencement of declaratory judgment action by Board of Trustees and request for preliminary injunction. | ¶ 30 | Twenty-eighty of 3rd Article 78 Petition. |
| 11. Alleged arson of Rattner's house and failure to investigate and coverup. | ¶ 33–36 | No equivalent. |
| 12. Filing of appeal to Zoning Board of Appeals by Board of Trustees and Planning Commission. | ¶ 36 | ¶ Thirty-third of 3rd Article 78 Petition. |
| 13. Commencement of 3rd Article 78 Proceeding to nullify the appeals to the Zoning Board of Appeals. | ¶ 37 | 3rd Article 78 Notice of Petition and Petition. |
| 14. Ticketing of vehicles belonging to plaintiffs and their employees. | ¶ 31 | Tenth Affirmative Defense as supplemented by answers to interrogatory. |
| 15. Allegations of denial of civil rights to plaintiffs. | ¶ 4–5, 41–55 | Tenth Affirmative Defense as supplemented by answers to interrogatories 7 and 24. Notice of Claim dated November 8, 1983. |

All of the allegations in the federal complaint, other than that of a failure to investigate fully the alleged arson, are also pleaded as causes of action in the on-going state cases.

**Discussion**

 Pleasantville has moved to dismiss or stay this action in view of the parallel state actions. A court has the inherent power to stay an action based on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952), *quoted* in *Moses H. Cone Hospital*

*v. Mercury Constr. Corp.*, 460 U.S. 1, 15, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983). Because the circumstances under which a court should refuse to exercise its jurisdiction are few, a showing of exceptional circumstances is necessary, *Colorado River Water Cons. Dist. v. U.S.*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483. There are, however, no hard-and-fast rules which provide resolution of this discretionary decision. *Moses Cone, supra*, 460 U.S. at 15, 103 S.Ct. at 936. The decision requires a balancing of various factors, including the desirability of avoiding piecemeal litigation, the order in which jurisdiction was obtained by the state and federal forums, and the degree to which the cases necessitate duplication of discovery or issue resolution. *See Moses Cone, supra; Colorado River, supra; American Motorists Insurance Co. v. Philip Carey Corp.*, 482 F.Supp. 711 (S.D.N.Y.1980); *Universal Gypsum of Ga. Inc. v. American Cyanamid Co.*, 390 F.Supp. 824 (S.D.N.Y.1975); *Bethlehem Steel Corp. v. Tishman Rlty & Const.*, 72 F.R.D. 33 (S.D.N.Y.1976).

■ The facts as pleaded by Rattner establish that the federal case is inextricably intertwined with the state cases. Only the allegations of a failure to investigate the arson charge distinguishes the federal and state actions. Proof of the arson charges as well, however, will still necessarily involve facts identical to those substantiating the state charges. This distinction between the state and federal actions consequently is not sufficient to merit proceedings in federal court on the arson charges. Otherwise, the same events and improprieties on the part of Pleasantville are at issue in the various cases, and liability in the federal action will depend upon the legality of the governmental acts which are at the root of the state cases. Indeed, Rattner, by specifically amending his answer in the declaratory judgment action to include the tenth affirmative defense, presented to the state court the identical issues now before this court.

The pending state court actions, which precede this action, have already produced extensive discovery, and the discovery in this case has covered nearly identical subjects of inquiry, producing needless duplication. Furthermore, although the complaint is cast in terms of constitutional deprivations, and I do not reach the issue of the sufficiency of the pleadings, the alleged deprivations involve matters of town law, the interpretation of which is perhaps better suited to a state court more familiar with the subject matter involved. The state courts are also fully competent to handle the constitutional issues raised by Rattner.

These factors compel me to conclude that the intercession of a federal court at this stage in the litigation will have an ill-effect upon the swift, efficient, and unified resolution of the issues underlying the various lawsuits. I therefore find that a stay of the federal action, until determination by the state courts of the mutual issues currently pending in those cases, is the proper course. Aware that the staying of a federal action because of a parallel state action is rarely justified, I nonetheless exercise my discretion to order such a stay in this case. Upon resolution of the state actions, either party may move to terminate the stay in this action.

IT IS SO ORDERED.